STATE OF NORTH CAROLINA v. WILLIAM NEIL FREEMAN, JR.

No. 7620SC272

(Filed 6 October 1976)

1. **Automobiles § 113— death by vehicle — exculpatory statement of defendant — sufficiency of evidence**

    In a prosecution for driving on the wrong side of the road and manslaughter, evidence was sufficient to be submitted to the jury, even though the State introduced an exculpatory statement of defendant and did not introduce evidence contradicting the statement, since the introduction by the State of an exculpatory statement made by defendant did not preclude the State from showing that the facts concerning the crime were different from what defendant said about them.

2. **Automobiles § 115— charge of involuntary manslaughter — death by vehicle as lesser included offense**

    The offense of death by vehicle as set forth in G.S. 20-141.4 is a lesser included offense of involuntary manslaughter.

APPEAL by defendant from *Collier, Judge.* Judgment entered 28 January 1976 in Superior Court, MOORE County. Heard in the Court of Appeals 18 June 1976.

Defendant was convicted in District Court of driving on the wrong side of the highway and appealed to Superior Court. He was indicted for manslaughter, and the cases were consolidated for trial in Superior Court. The State offered evidence tending to show that at about 10:30 p.m. on 8 October 1975, G. L. Hoyle, a highway patrolman, drove across the Crane Creek bridge on U. S. Highway 1 in Moore County. At that time it had just stopped raining, and Hoyle did not remember any water standing on the highway. Shortly after 11:00 p.m. James Alexander drove to the Crane Creek bridge and observed that a car traveling north on Highway 1 had driven into the abutment on the southbound side of the bridge. He saw defendant unconscious in the driver's seat of the wrecked vehicle, and Michael Martinez, the deceased, in the right front seat. It was not raining at that time, but the road was damp. About an hour later Hoyle returned to the Crane Creek bridge. He observed the wrecked automobile, and in his opinion it was entirely off the paved highway. There were marks leading from the wheels up the shoulder of the road for a distance of 116 feet. He saw defendant being carried to an ambulance, and he noticed an odor of alcohol about his person. Patrolman C. A. Todd

arrived at the scene at 12:20 a.m. He observed a Volkswagen against the bridge abutment on the left hand side of the roadway. The bridge abutment was driven into the center front of the vehicle almost back to the windshield. The fenders of the vehicle had wrapped around the side of the abutment. He saw tire impressions leading from the left hand edge of the paved surface up to the rear of the Volkswagen. Later, at the Moore County Hospital he observed defendant and detected the odor of alcohol about his person. On 10 October Hoyle questioned defendant about the accident after advising him of his constitutional rights. Defendant stated that he was driving the car north on Highway 1 when "a big puddle of water splashed on the windshield and he couldn't control the vehicle, and that was all he remembered." He said that before the accident he had taken some valium tablets that had been prescribed for him and had drunk a few beers. An autopsy revealed that Michael Martinez had been killed as a result of bleeding caused by a tear in the aorta, which could have resulted from a blow to the chest.

Defendant offered no evidence. The jury found him guilty of death by vehicle and driving on the wrong side of the highway. The court granted defendant's motion for arrest of judgment as to the charge of driving on the wrong side of the highway, and it sentenced him to two years in jail for death by vehicle. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney James Wallace, Jr., for the State.*

*Hoyle & Hoyle, by Kenneth R. Hoyle and J. W. Hoyle, for defendant.*

MARTIN, Judge.

[1]   Defendant has grouped his five assignments of error into three arguments in his brief. He first contends it was error to deny his motions for dismissal and judgment as of nonsuit at the close of the State's evidence and at the close of all the evidence. He argues there is no evidence of culpable negligence and the State offered no evidence to contradict his exculpatory statement to Officer Hoyle that the accident occurred because he lost control of his vehicle when a puddle of water struck his windshield. It is well settled in this State that in passing upon a motion for nonsuit in a criminal case, the court must ". . .

State v. Freeman

consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of very reasonable inference to be drawn therefrom. (Citations omitted.)" *State v. Goines*, 273 N.C. 509, 513, 160 S.E. 2d 469, 472 (1968). Moreover, "[c]ontradictions and discrepancies, even in the State's evidence, are matters for the jury and do not warrant nonsuit. (Citation omitted.)" *State v. Bolin*, 281 N.C. 415, 424, 189 S.E. 2d 235, 241 (1972). If when so considered there is substantial evidence, whether direct, circumstantial, or both, of all material elements of the offense charged, then the motion for nonsuit must be denied and it is then for the jury to determine whether the evidence establishes guilt beyond a reasonable doubt. See *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

Specifically, defendant contends that he comes within the purview of the rule stated in *State v. Bolin, supra*. In Bolin, the Court stated that " '[w]hen the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements. (Citations omitted.)' " *State v. Bolin, supra*, at 424, 189 S.E. 2d at 241. However, it is equally well established that the introduction by the State of an exculpatory statement made by the defendant does not preclude the State from showing that the facts concerning the crime were different from what defendant said about them. *State v. Bolin, supra*. After carefully reviewing the record, we hold that the court properly ruled that the evidence in this case was sufficient to withstand defendant's motions for nonsuit.

[2] In his second argument defendant contends that the court should have granted his motion for arrest of judgment as to the offense of death by vehicle. He argues that by instructing the jury on death by vehicle as a lesser included offense of manslaughter, the court violated the provisions of G.S. 20-141.4(c), which state that ". . . no person who has been placed in jeopardy upon a charge of manslaughter shall subsequently be prosecuted for death by vehicle arising out of the same death." He contends that death by vehicle cannot be considered a lesser included offense of involuntary manslaughter because of the "mutual exclusiveness" between the two offenses and because the legislature would have stated expressly in the statute that

death by vehicle is a lesser included offense of manslaughter if it had intended such a result.

The purpose of G.S. 20-141.4(c) is not to prevent the courts from treating one offense as a lesser included offense of the other, but rather to prevent the State from bringing a new prosecution against a defendant for death by vehicle after he has already been convicted or acquitted of manslaughter.

It is well settled in North Carolina that ". . . [w]hen a defendant is indicted for a criminal offense he may be convicted of the charged offense or of a lesser included offense when the greater offense charged in the bill contains all the essential elements of the lesser offense, all of which could be proved by proof of the allegations of fact contained in the indictment. (Citations omitted.)" *State v. Riera,* 276 N.C. 361, 368, 172 S.E. 2d 535, 540 (1970). See also G.S. 15-170. " 'The common-law definition of involuntary manslaughter includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent manner, and from the negligent failure to perform a legal duty.' (Citations omitted.)" *State v. Massey,* 271 N.C. 555, 557, 157 S.E. 2d 150, 153 (1967). Criminal negligence in automobile accident cases is something more than actionable negligence in the law of torts; it is such recklessness, " 'proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.' (Citations omitted.)" *State v. Massey, supra* at 557, 157 S.E. 2d at 153.

Under this definition " '[a]n intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence. . . .' (Citations omitted.)" *State v. Massey, supra* at 557, 157 S.E. 2d at 153.

The defendant argues that "death by vehicle" is not a lesser included offense under a charge of manslaughter. G.S. 20-141.4 was enacted by the 1973 General Assembly making a violation thereof a misdemeanor. Section (a) of the Act is as follows:

> "Whoever shall unintentionally cause the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of death by

vehicle when such violation is the proximate cause of said death."

This is a case of first impression. It requires an interpretation of G.S. 20-141.4 as it relates to the common law crime of manslaughter. The number of deaths resulting from the operation of motor vehicles on the highways has increased to an alarming extent. Indictment for the common law crime of manslaughter has proved ineffective as a means of repressing the negligence in motor vehicle operation causing death upon the public thoroughfares. The motorist is generally a reputable citizen, and the wrong committed by him which brings someone to his death is most often an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or possible consequences of a dangerous nature, when tested by the rule of reasonable prevision. Thus, it is apparent that the intention of the legislature in enacting G.S. 20-141.4 was to define a crime of lesser degree of manslaughter wherein criminal responsibility for death by vehicle is not dependent upon the presence of culpable or criminal negligence.

The instant case does not meet the test of distinctness. Every element of G.S. 20-141.4 is embraced in the common law definition of involuntary manslaughter. The evidence presented at trial was sufficient to sustain a verdict of guilty of death by automobile. In the trial we find no prejudicial error.

No error.

Judges BRITT and HEDRICK concur.