STATE OF NORTH CAROLINA v. JAMES L. THOMPSON

No. 7817SC236

(Filed 1 August 1978)

1. **Automobiles § 114— death by vehicle—instructions proper**

    In a prosecution for manslaughter where the trial court fully explained the elements of the offenses of involuntary manslaughter and death by vehicle, the court properly pointed out that with respect to the offense of death by vehicle the State was not required to prove any intentional or reckless conduct on the part of the defendant, and such instruction comported with the definition in G.S. 20-141.4.

2. **Jury § 7.1— challenge to the array—method of compiling jury list proper**

    Defendant's contention that use of tax rolls and voter registration books to compile a jury list is unconstitutional since some segments of the population are underrepresented on these lists is without merit, and defendant's motion to quash the jury array was therefore properly denied.

3. **Automobiles § 113.1— manslaughter—sufficiency of evidence**

    Defendant's contention that his motion to dismiss the charge of manslaughter should have been granted because there was no evidence of in-

tentional or culpably negligent conduct was without merit where the evidence tended to show that defendant was driving under the influence of alcohol at an excessive rate of speed and was weaving from one side of the highway to the other when he struck the victim's well-lighted motorcycle from behind.

APPEAL by defendant from *Crissman, Judge*. Judgment entered 1 November 1977 in Superior Court, SURRY County. Heard in the Court of Appeals 28 June 1978.

The defendant was charged with manslaughter and operating a motor vehicle on the public highway while under the influence of intoxicating liquor. He pled not guilty to both charges, and the State presented evidence tending to show the following:

On the evening of 26 December 1976, Donna Scott was driving her automobile in a southerly direction on Highway 52 near Mt. Airy, North Carolina. A motorcycle driven by John Kiger was proceeding in the same direction ahead of Scott and was sufficiently lighted to be clearly visible from the distance at which Scott followed. Scott noticed a pickup truck approaching at a fast rate of speed from the rear. When the truck which was driven by the defendant pulled dangerously close behind her, she lightly tapped the brakes and moved to the right to signal him to pass. The truck pulled out to pass but when he was even with the front of Scott's automobile, he cut back into her lane. Scott applied her brakes to avoid collision. As Scott followed the defendant from a safe distance she noticed his truck weaving across the south-bound lanes almost across the median. She then saw some black smoke but did not see the motorcycle. The truck weaved back across the south-bound lane, onto the paved shoulder and stopped. Scott, after running over a motorcycle helmet, drove her automobile to the shoulder and stopped behind the defendant's truck. In the meantime, Kiger's motorcycle had come to rest nearby.

When Scott got out of her car the defendant, who was leaning against his truck, asked "where the cycle came from." Scott began searching for Kiger and found his body in the median of the highway approximately 1000 feet from the point of collision. Unable to feel any pulse, Scott determined that Kiger was dead.

The police arrived shortly thereafter, and the investigating officer detected a strong odor of alcohol on the defendant's

breath. He also observed that the defendant was unsteady on his feet, that his eyes were red and glassy, and that he spoke with a slur. The defendant was then asked to go to the police station and on the way he fell asleep in the back seat of the police car. Upon their arrival at the station the defendant submitted to a breathalyzer test and was determined to have .21% blood alcohol content. It was later determined that Kiger had died instantly in the collision.

The defendant presented no evidence.

The jury found the defendant guilty of both charges. From a consolidated judgment imposing 5-7 years imprisonment, the defendant appealed.

*Attorney General Edmisten, by Associate Attorney Henry H. Burgwyn, for the State.*

*Renn Drum for the defendant appellant.*

HEDRICK, Judge.

[1] The defendant first assigns as error the trial judge's instruction distinguishing involuntary manslaughter from the lesser-included offense of death by vehicle. In his brief the defendant contends that the following portion of the trial judge's charge was in error: "Now death by a vehicle differs from involuntary manslaughter in that the State need not prove that the defendant's violation of any safety statute was done intentionally or recklessly."

General Statute 20-141.4 which defines the offense of "Death by Vehicle" provides:

> (a) Whoever shall unintentionally cause the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of death by vehicle when such violation is the proximate cause of said death.

In *State v. Freeman*, 31 N.C. App. 93, 228 S.E. 2d 516, *cert. denied*, 291 N.C. 449, 230 S.E. 2d 766 (1976), this Court had occasion to discuss the offense set out in the foregoing statute and its relation to the offense of involuntary manslaughter. Judge Martin, speaking for the majority, considered the common-law defini-

tion of involuntary manslaughter and concluded that "it is apparent that the intention of the legislature in enacting G.S. 20-141.4 was to define a crime of lesser degree of manslaughter wherein criminal responsibility for death by vehicle is not dependent upon the presence of culpable or criminal negligence." 31 N.C. App. at 97, 228 S.E. 2d at 519.

The trial judge in the present case fully explained the elements of the offenses of involuntary manslaughter and death by vehicle. The defendant's contention that in distinguishing between the two, the court "vastly reduced the effective scope of N.C. G.S. 20-141.4, to situations where there was no intent or recklessness" is manifestly incorrect. The trial court merely pointed out that with respect to the offense of death by vehicle the State is not required to prove any intentional or reckless conduct on the part of the defendant. This instruction comports with the definition in G.S. 20-141.4 and our opinion in *Freeman*. Therefore, this assignment of error is overruled.

[2] The defendant also assigns as error the denial of his motion to quash the jury array. Prior to trial the court conducted a voir dire hearing on the defendant's motion and at its conclusion found "that there has been no discrimination against anyone or any group of people and that the list being chosen from the tax scrolls and the voter registration books would include a fair cross-section of all citizens and would be a fair way to select a jury list." The defendant does not attack the findings of the trial court; nor does he challenge the court's conclusion that the selection process was in compliance with the North Carolina General Statutes. Instead, he argues that use of tax scrolls and voter registration books to compile a jury roll is unconstitutional since some segments of our population are underrepresented on these lists. The defendant cites no authority for his position, and the courts of this State have held otherwise. *See State v. Cornell*, 281 N.C. 20, 187 S.E. 2d 768 (1972); *State v. Foddrell*, 291 N.C. 546, 231 S.E. 2d 618 (1977).

[3] Finally, the defendant assigns as error the denial of his motion to dismiss the charge of manslaughter, arguing that there was no evidence of intentional or culpably negligent conduct. The evidence viewed in the light most favorable to the State tends to show that the defendant was driving under the influence of alcohol at an excessive rate of speed, weaving from one side of

the highway to the other when he struck Kiger's well-lighted motorcycle from behind. This evidence clearly was sufficient to submit the case to the jury and to support the verdict.

We hold that the defendant received a fair trial free from prejudicial error.

No error.

Judges MORRIS and WEBB concur.