IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-415

Filed 4 February 2026

Buncombe County, No. 22CR320237-100

STATE OF NORTH CAROLINA

      v.

CHARLES BRANDON GIBBON, Defendant.

Appeal by defendant from judgment entered 25 April 2024 by Judge Nathaniel J. Poovey in Buncombe County Superior Court. Heard in the Court of Appeals 15 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Steven C. Wilson, Jr., for the State.*
>
> *Devereux & Banzhoff, PLLC, by Andrew B. Banzhoff, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Charles B. Gibbon challenges the judgment entered consistent with the jury's verdict convicting him of misdemeanor death by vehicle ("MDBV") arising from an accident in which he crashed his vehicle into a tree after failing to stay in his lane of travel resulting in the death of a passenger.

## I. Background

At trial, the State's evidence tended to show Defendant drove his vehicle at a high rate of speed, well over the posted speed limit, on a windy mountain road. After

navigating a curve, Defendant lost control of his vehicle. Defendant's vehicle left the proper lane of travel, rotated and skidded 146.7 feet before colliding with a tree, killing a passenger in Defendant's vehicle.

Defendant was initially charged *in District Court* for violating G.S. 20-141.4(a2), our MDBV statute, which makes it a misdemeanor to unintentionally cause the death of another while engaged in a non-alcohol related, moving violation proximately causing the death. However, Defendant was never tried in District Court for the misdemeanor. Rather, he was subsequently tried *in Superior Court* by way of a grand jury's return of a presentment and indictment.

At trial, Defendant moved to dismiss, arguing the State failed to show he intentionally violated the predicate offense for his MDBV charge, G.S. 20-146(a), our failure to maintain lane ("FTML") statute. A jury convicted Defendant. He appeals.

## II.    Analysis

Defendant raises two arguments on appeal, which we address in turn.

### A.  Subject-Matter Jurisdiction

First, Defendant contends the Superior Court lacked jurisdiction to try him for a misdemeanor *in the first instance*, because the District Court has exclusive, original jurisdiction. Indeed, before trial, Defendant sought to dismiss the matter on this basis. For the reasoning below, we conclude the Superior Court properly exercised jurisdiction by means of a presentment returned by the grand jury.

We review issues relating to subject-matter jurisdiction de novo. *State v.*

*Oates*, 366 N.C. 264, 266 (2012) (citation omitted).

We note Defendant was charged and tried *only* with a misdemeanor; he was not charged with any felony. Our District Courts have "exclusive, original jurisdiction" over misdemeanors *unless* provided otherwise in Article 22 of Chapter 7A. N.C.G.S. § 7A-272(a) (2023).

Common examples where Article 22 provides our Superior Courts with *original* jurisdiction to try a misdemeanor charge include where the misdemeanor is a lesser-included offense of a felony for which the grand jury has returned an indictment, *see* N.C.G.S. § 7A-271(a)(1), *or* where the misdemeanor has been properly consolidated for trial with a felony for which an indictment has been returned, *see* N.C.G.S. § 7A-271(a)(3).[1] However, neither apply to the present matter, as Defendant was not indicted for a felony.

Relevant to our analysis, there is nothing in Article 22 which allows a Superior Court to exercise *original* jurisdiction to try a stand-alone misdemeanor where the misdemeanor charge is *initiated* through an indictment. However, Article 22 does convey such jurisdiction "[w]hen the charge is initiated by a presentment." N.C.G.S. § 7A-271(a)(2). It is important in our analysis to briefly note the difference between an indictment and a presentment.

---

[1] More typically, a stand-alone misdemeanor tried in Superior Court has arrived at the court only after the defendant has appealed a conviction of that misdemeanor from a District Court. N.C.G.S. § 7A-271(a)(5).

"[An] indictment is a written accusation by a grand jury . . . charging a person with the commission of one or more criminal offenses." N.C.G.S. § 15A-641(a). However, it is the prosecutor and *not* the grand jury who must start the indictment process. Specifically, it is the prosecutor who "submit[s] a bill of indictment [to the grand jury] charging [an] offense[.]" N.C.G.S. § 15A-627(b). And the grand jury *must* return the bill as a true bill if that body determines probable cause exists based on the prosecutor's evidence that the defendant committed the crime charged. N.C.G.S. § 15A-628(a)(1).

A presentment, like an indictment, also consists of "a written accusation by a grand jury" but, unlike an indictment, is *made on its own motion*[.]" N.C.G.S. § 15A-641(c) (emphasis added). Where the return by the grand jury of a true bill of indictment initiates criminal proceedings against a defendant, the return of a presentment by the grand jury does not. Rather, when a grand jury returns a presentment, it becomes the duty of the prosecutor "to investigate the factual background" of the presentment "and to submit bills of indictment [on the charge] when it is appropriate to do so." N.C.G.S. § 15A-641(c).

Further, at common law, a presentment was made *ex mero motu* by the grand jury "upon their own knowledge or observation, or upon information from others, without any bill of indictment having been [first] submitted to them by the [prosecutor.]" *State v. Thomas*, 236 N.C. 454, 457 (1952). However, under our statutory scheme, a presentment need not to be initiated by a grand jury *ex mero*

*motu, see id.*, as our General Assembly has provided that "[a]n investigation may be initiated [by the grand jury] . . . upon *the request* of the . . . prosecutor[,]" N.C.G.S. 15A-628(a)(4) (emphasis added).

Finally, in the presentment context, a grand jury has more discretion than in the indictment context as to whether a matter will be tried in the Superior Court. That is, in the context of an indictment, the grand jury is obligated to return the bill as a true bill or not as a true bill based on the evidence presented by the prosecutor. In the context of a presentment, however, the relevant statutory language states the grand jury "[*m*]*ay* investigate any offense as to which no bill of indictment has been submitted . . . by the prosecutor and issue a presentment . . . if [the grand jury] has found probable cause for the charges made." (emphasis added). N.C.G.S. § 15-628(a)(4). The General Assembly's use of the word "may," rather than "must" or "shall," is telling. "The word 'may,' as used in statutes, in its ordinary sense, is permissive and not mandatory." *Wing v. Goldman Sachs*, 382 N.C. 288, 302 (2022) (quoting *Rector v. Rector*, 186 N.C. 618, 620 (1923)).

In the present matter, Defendant was only charged with a misdemeanor. Accordingly, the Superior Court would not have original jurisdiction to try Defendant if the prosecutor initially sought an indictment. The Superior Court would only have jurisdiction where the indictment was sought only after the grand jury returned a presentment. And the record shows the indictment was only sought and returned after the grand jury first returned a presentment.

Relatedly, a grand jury's ability to proceed with a case beyond their issuing of a presentment is constrained by the prosecutor, who acts as a safeguard. Beyond explaining what a presentment is, G.S. 15A-641(c) also places a statutory obligation on the prosecutor to "investigate the factual background of every presentment returned in his district and to submit bills of indictment . . . when it is appropriate to do so." N.C.G.S. § 15A-641(c). Prior to the enactment of G.S. 15A-641, our Supreme Court provided an explanation for the General Assembly's addition of this obligation during North Carolina's infancy:

> The great experience of early days proved the practice of trying criminal cases upon the presentments of grand jurors to be wholly impracticable. As a consequence, the General Assembly of 1797 outlawed the practice by a statute, which has been retained to this day in slightly changed phraseology, and which now appears in this provision of the General Statutes: ["]No person shall be arrested on a presentment of the grand jury, or put on trial before any court, but on indictment found by the grand jury, unless otherwise provided by law.["] Since the adoption of the act of 1797, a presentment is regarded as nothing more than an instruction by the grand jury to the public prosecuting attorney for framing a bill of indictment for submission to them.

*Thomas*, 236 N.C. at 458 (internal citations omitted). While we have had several opportunities to resolve related issues arising out of G.S. 15A-641(c), *see, e.g., State v. Baker*, 263 N.C. App. 221, 228 (2018) (holding that the *simultaneous* submission of a presentment by the grand jury and an indictment to a grand jury rendered them "invalid as a matter of law"), we have yet to ascertain the meaning of the word

"investigate" as intended by our General Assembly.

Defendant was initially charged with MDBV pursuant to G.S. 20-141.4(a2), premised on Defendant's failure to maintain his lane under G.S. 20-146(a), in District Court. Nearly a year later, on 28 August 2023, the grand jury returned a presentment which found probable cause for the same charges and requested an investigation of the facts to determine whether an indictment would be appropriate. Unlike in *Baker*, the assistant district attorney ("ADA") assigned this case did not simultaneously seek an indictment based on the presentment.

Rather, forty-one days later, a grand jury returned an indictment, and Defendant's case proceeded to trial. During those forty-one days, the ADA "reviewed the file to prepare the indictment but did not seek new evidence related to the case." The ADA reviewed the case, as opposed to seeking additional evidence, because "all essential investigatory steps had been completed[,]" "the physical evidence had been removed from the scene of the crash[,]" and "further investigation beyond that which had already been done was a practical impossibility." Defendant does not challenge these findings and thus they are binding on appeal. *See State v. Sparks*, 362 N.C. 181, 185 (2008) (explaining that unchallenged findings "are binding on [an] appellate court").

Defendant moved to dismiss the Superior Court case asserting the Superior Court lacked subject-matter jurisdiction. The trial court denied Defendant's motion.

On appeal, Defendant contends the word "investigate" requires the prosecutor,

prior to presenting a bill of indictment, to engage in fact gathering in which it uncovers facts in addition to those contained in the presentment. If the State is incapable of discovering new facts, according to Defendant, the State is limited to bringing the case in District Court. We disagree with both of Defendant's contentions.

The General Assembly enacted G.S. 15A-641(c) as part of our Criminal Procedure Act of 1974. An Act to Amend the Laws Relating to Pretrial Criminal Procedure, ch. 1286, § 1, 1974 N.C. Sess. Laws 490, 522. "[This Court] presume[s] that when the legislature enacts a statute, it intentionally includes and gives meaning to every word therein." *Happel v. Guilford Cnty. Bd. of Educ.*, 387 N.C. 186, 207 (2025) (citations omitted). Thus, the principal question becomes, what did our General Assembly intend for "investigate" to mean as used in G.S. 15A-641(c)?

Generally speaking, we interpret a word in accord with its plain and ordinary meaning. *Id.* at 206, 208. *See also N.C. Farm Bureau Mut. Ins. Co., Inc. v. Hebert*, 385 N.C. 705, 711 (2024) ("The primary goal of statutory interpretation is to accomplish legislative intent, which, in the first instance, is discerned from the plain language of the enactment." (citation omitted).

Around the time Section 15A-641(c) was enacted, "investigate" was defined as: "inquire into systematically[,] to subject to an official probe[,] to make a systematic examination[, or] to conduct an official inquiry." *Investigate*, Webster's Third New Int'l Dictionary 1189 (3rd ed. 1966). We hold that based on this definition, G.S. 15A-641(c)'s investigation requires a prosecutor to formally examine the facts of a case.

While this *may* entail the gathering of any additional facts that is not required, despite Defendant's contentions.

Because purpose of the statute was to inject a safeguard into the presentment process to protect against overzealous grand juries, we see no reason to depart from the plain meaning of the text: Considering that (1) a prosecutor *can* initiate a presentment investigation under G.S. 15A-628(a)(4) and (2) the problem that G.S. 15A-641(c)'s investigation obligation was designed to cure was to stop "ambitious" grand juries, *see Thomas*, 236 N.C. at 458, it does not appear that the General Assembly intended to prevent a situation where a prosecutor properly investigates a potential misdemeanor, initiates and seeks out a presentment, reviews the file, and then secures an indictment. Thus, the interpretation we ascribe to the word "investigate" is sufficient to meet the longstanding statutory prophylaxis's requirement for prosecutorial supervision.

Here, the unchallenged and binding findings of fact state that the ADA "reviewed the file to prepare the indictment[.]" New evidence, however, was not sought because it would have been practically impossible—and potentially futile—to do so as all "essential investigatory steps" were completed and all "physical evidence had been removed[.]" Indeed, it appears there was nothing left to do besides examining and reviewing Defendant's file. Thus, by reviewing the file, the ADA discharged her statutory duty to investigate the factual background of the presentment. We, therefore, conclude the trial court did not err in denying

Defendant's motion to dismiss with respect to the subject-matter jurisdiction issue.

## B. Fatal Variance

Second, Defendant argues there was a fatal variance between his indictment and the proof offered at trial, thereby requiring the trial court to grant Defendant's motion to dismiss. Again, we disagree.

"[W]e review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720 (2016). We review the evidence in a light most favorable to the State when determining whether "there is substantial evidence of (1) each essential element of the offense charged . . . and, (2) [the] defendant [is] the perpetrator of the offense." *State v. Powell*, 299 N.C. 95, 98–99 (1980). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Turnage*, 362 N.C. 491, 493 (2008) (citation omitted).

"[A] defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment." *State v. Jackson*, 218 N.C. 373, 376 (1940). "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." *State v. Barnett*, 368 N.C. 710, 713 (2016) (citation omitted). Only those variances which are (1) material, meaning that it "involve[s] an essential element of the crime charged," and (2) prejudicial warrant reversal. *State v. Juran*, 294 N.C. App. 81, 83 (2024) (citation omitted). *See also State v. Pickens*, 346 N.C. 628, 646 (1997) ("[T]he defendant must show a variance regarding an essential element of the offense.").

Defendant was charged with MDBV with the predicate offense being FTML. A person commits MDBV when "[t]he person unintentionally causes the death of another person, . . . was engaged in the violation of any [motor vehicle law or ordinance] other than impaired driving . . ., and . . . [the violation] is the proximate cause of the death." N.C.G.S. § 20-141.4(a2) (2023). A person violates G.S. 20-146(a) when the person fails to drive "upon the right half of the highway" subject to several exceptions not relevant here. N.C.G.S. § 20-146(a) (2023).[2]

Defendant seems to contend that the State was required to show that he *intentionally* left his lane of traffic in order for the State to use G.S. 20-146(a) as the predicate offense. We disagree. What is unclear from Defendant's arguments made in his brief and oral argument, is whether Defendant takes issue with the *mens rea* or *actus reus* component of the crime charged.

We note our Court has previously discussed and foreclosed Defendant's argument that to be convicted of G.S. 20-141.4(a2) a defendant must *intentionally*, referring to the defendant's mental state, violate a motor vehicle statute or ordinance. *See State v. Freeman*, 31 N.C. App. 93, 96–97 (1976) ("[T]he wrong committed by [the defendant] . . . is most often an unintentional violation of a prohibitory statute or

---

[2] While the indictment stated Defendant violated G.S. 20-146(a) as the predicate offense, the jury was given an instruction from G.S. 20-146(d)(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). Defendant did not object to that instruction, nor does he raise this specific issue on appeal.

- 11 -

ordinance . . . . Thus, it is apparent that the intention of the legislature . . . was to define a crime . . . wherein criminal responsibility . . . is not dependent upon the presence of culpable or criminal negligence."); *see also State v. Thompson*, 37 N.C. App. 444, 447 (1978) ("[T]he [S]tate is not required to prove any intentional or reckless conduct on the part of the defendant.").[3]

In any event, our Supreme Court has held that a driver violates G.S. 20-146 where he loses control of his vehicle while driving in an otherwise unsafe manner. *See, e.g.*, *Anderson v. Webb*, 267 N.C. 745, 748–49 (1966) (stating that crossing into the opposite lane, thereby violating G.S. 20-146, after the defendant was driving at an excess speed and lost control was negligence *per se*).

Our Court has held that in determining whether a defendant has violated G.S. 20-146, it is his negligent acts precipitating the loss of control which is the "crucial inquiry," not whether he intentionally left his lane. *See Sobczak v.* Vorholt, 181 N.C. App. 629, 637 (2007) (holding that it was error for the trial court not to give a negligence *per se* instruction where the evidence showed the defendant-driver rounded a curve, hit an ice patch, and lost control of his car striking the plaintiff's vehicle).

---

[3] Both *Freeman* and *Thompson* were interpreting G.S. 20-141.4 prior to the General Assembly's enactment of the Safe Roads Act of 1983. *See* An Act to Provide Safe Roads by Requiring Mandatory Jail Terms for Grossly Aggravated Drunken Drivers, Providing an Effective Deterrent to Reduce the Incidence of Impaired Driving, and Clarifying the Statutes Related to Drinking and Driving, ch. 435, § 27, 1983 N.C. Sess. Laws 332, 354. The Safe Roads Act repealed the earlier version of G.S. 20-141.4, and enacted the current with minor changes, and added a prohibition on Double Jeopardy, not relevant to this appeal. *See generally State v. Davis*, 198 N.C. App. 443, 450–52 (2009).

Defendant, though, argues that the MDBV statute requires the State show he was "engaged" in the violation of the predicate motor vehicle violation, thus requiring that he intentionally left his lane of travel. We disagree.

"Engaged," as a verb, means "[t]o employ or involve oneself [or] to take part in[.]" *Engage*, Black's Law Dictionary 474 (5th ed. 1979); *see also Engage*, Webster's Third New Int'l Dictionary 751 (3rd ed. 1966) ("[T]o employ or involve oneself[;] to take part[.]"). Although Defendant argues that he was not "engaged" in a violation of G.S. 20-146, we conclude that by speeding on a narrow, windy road, Defendant "involved himself" or "took part" in losing control of his vehicle, as his volitional actions played an integral role in the entire causal chain.

Stated differently, his deliberate actions culminated in him losing control over his vehicle, departing from his lane, and colliding with a tree on the other side of the road. Therefore, the State presented sufficient evidence for a reasonable juror to conclude Defendant violated G.S. 20-141.4(a2). The trial court did not err in denying Defendant's motion to dismiss.

## III. Conclusion

Defendant received a fair trial, free of reversible error.

NO ERROR.

Judges ARROWOOD and HAMPSON concur.